

**SIGNED this 27th day of November, 2013.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | No. 11-13013 |
| | § | |
| KAREN LYNN POTTER, | § | |
| | § | |
| | § | Chapter 13 |
| Debtor. | § | |

## MEMORANDUM OPINION

In this case, the Court must decide whether funds held by a Chapter 13 trustee when a case was dismissed can be distributed to creditors pursuant to a confirmed plan, or must be returned to the individual debtor. The Court holds that the Bankruptcy Code requires the trustee to pay the funds to the debtor, because the Court did not order otherwise prior to (or at the time of) dismissal.

Before the Court is the Motion to Allow Disbursement and Request for Hearing (the "Motion") [Dkt. No. 112], filed by the Chapter 13 Trustee Deborah Langehennig (the "Trustee"), as well as the Debtors [sic] Response to the Chapter 13 Trustee's Motion to Allow Disbursement

and Request for Hearing (the "Response") [Dkt. No. 115], filed by Karen Lynn Potter (the "Debtor"), in the above-captioned case. In addition to the Motion and Response, the Court has considered the presentations made at the September 24, 2013 hearing on this matter (the "Hearing"), the other evidence in the record, and the relevant case law.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I.   FACTUAL BACKGROUND

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on December 7, 2011 [Dkt. No. 1]. Chapter 13 provides significant financial relief to individuals with regular income: among other things, a Chapter 13 debtor enjoys the protection of the automatic stay, can restructure certain secured debts, and can pay unsecured creditors a fraction of what they are owed while retaining both exempt and nonexempt assets. In return, the debtor must dedicate all income (less an allowance for living expenses) to the payment of creditors for a specified period of time, often five years, and otherwise comply with the detailed requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, which, among other things, require court approval for the retention and payment of professionals.

In this case, the Debtor's schedules reflected ownership of a home encumbered by a mortgage, items of personal property, priority debts totaling over $16,000, and unsecured debts totaling over $175,000. Her schedules also reflected monthly income, between her and her husband Wayne Potter, of approximately $16,000, and monthly expenses of approximately $10,400 [Dkt. Nos. 5, 11].

At her meeting with her creditors, held pursuant to Bankruptcy Code section 341, the Debtor revealed to the Trustee that she and her ex-husband, James Arnold Lovett, were parties to

a family law proceeding in Illinois, concerning amounts to be paid from the debtor to Lovett for spousal support. The Trustee informed the Debtor that her retention of, and payment of fees to, her Illinois attorney, Marjorie Sher, would have to be approved by the bankruptcy court.

The Debtor's Chapter 13 plan was confirmed by the bankruptcy court, by order dated March 28, 2012 [Dkt. Nos. 10, 20]. In her plan, the Debtor agreed to pay $1000 per month for 5 months, and then $5500 for 38 months, at the end of which she would have fully satisfied the claims of her creditors. These payments were to be made to the Trustee, who would in turn pay the creditors. The plan said nothing about the Illinois proceedings, or payment to Sher.

In fact, contrary to the requirements of bankruptcy law, and despite the explicit instruction given by the Trustee to the Debtor at the section 341 meeting, the Debtor paid Sher many thousands of dollars, all without court approval. The payments came to light in December of 2012, when the Debtor filed an application to retain a portion of her 2011 tax refund, in order to help her pay Sher another $6500 [Dkt. No. 53]. The disclosure set off a running battle between the Debtor, Sher, and the Trustee over Sher's attempt to have her employment approved by the Court on a retroactive (nunc pro tunc) basis, effective as of the date the bankruptcy began, and over Sher's attempt to have the fees incurred over that period of time approved by the Court [Dkt. Nos. 58, 59, 64, 67, 70, 72, 73, 74, 82, 84, 88, 94].

While this battle was ongoing, the Debtor sought and obtained an agreed order dismissing her case [Dkt. No. 99]. In the agreed order, the Debtor committed to provide an affidavit detailing the payments she made to Sher, and the Court retained jurisdiction "over all issues" relating to the retention and payments to Sher, and "allowance of and/or disgorgement of all fees and expenses charged and received by Ms. Sher." The order says nothing about the ultimate disposition of any fees disgorged by Sher and turned over to the Trustee.

In the end, the Court approved Sher's employment, nunc pro tunc, effective as of the petition date [Dkt. No. 73], and a settlement was reached concerning her fees. Sher agreed to disgorge $6593.97 to the Trustee and was allowed to retain the rest of what had been paid [Dkt. No. 117]. When this settlement was announced, the Court specifically declined to rule on the disposition of the funds, and directed the Trustee, if she wished, to file a motion seeking authority to disburse the remaining funds to creditors.

The Trustee filed the Motion the next day. The Trustee complained about the Debtor's "diversion" of estate funds to Sher without Court approval, and stated that the Debtor had agreed in a conference call to allow any funds disgorged by Sher to be paid to creditors. During the settlement hearing, the Debtor stated that when she made that agreement, she did not know that it was possible for her to receive the funds instead of her creditors. At the hearing on the Motion, the Trustee did not introduce any evidence concerning this agreement, and the Court has no basis for a finding of waiver, estoppel, or binding agreement concerning the disposition of the funds. The Court must squarely address the question of whether funds remaining in a bankruptcy estate as of the time a case is dismissed—without an order dictating otherwise prior to or at the time of dismissal—should be distributed to the creditors or returned to the debtor.

## II.    LEGAL ANALYSIS

This case turns on the interpretation of section 349(b)(3) of the Bankruptcy Code, which states: "Unless the court, for cause, orders otherwise, the dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

The Debtor argues that the money now in possession of the Trustee "revested" in the Debtor upon dismissal. The order dismissing this case did not direct the Trustee to pay the

disgorged funds to Potter's creditors, and upon dismissal, Potter argues, the funds "revest[ed]" in her.

Against this view, the Trustee argues that undistributed money should go to creditors. In the alternative, if the Court finds that the general rule of section 349 prevents that result, the Trustee suggests that even now—months after the dismissal—the Court could "order otherwise." She argues that such a result is warranted to prevent the Debtor from intercepting funds that should go to creditors, especially in light of the particulars of this case.

1. Should the Court follow the *Clark* district court and rule that section 349 requires money held by the Trustee at dismissal be paid to the debtor?

After a Chapter 13 plan has been confirmed, and money paid to a Chapter 13 trustee, should funds held by the trustee upon dismissal be returned to the debtor, or distributed pursuant to the plan? The issue has been faced recently in this district, by a bankruptcy court and then by a district court on appeal. *Clark v. Viegelahn*, No. SA-12-CA-979, Dkt. No. 7 (W.D. Tex. July 9, 2013); *In re Clark*, No. 10-51352, Dkt. No. 84 (Bankr. W.D. Tex. Aug. 2, 2012). The courts reached opposite conclusions.

The *Clark* bankruptcy court ordered the Chapter 13 trustee to distribute the funds to the creditors pursuant to the confirmed plan, despite the fact that the case was dismissed. The bankruptcy court followed the reasoning of *O'Quinn v. Brewer (In re O'Quinn)*, 143 B.R. 408 (Bankr. S.D. Miss. 1992), which dealt with the analogous issue of how trustees should distribute funds held upon the *conversion* of a case from Chapter 13 to Chapter 7.[1]

---

[1] *See* 11 U.S.C. §§ 348 (restricting property of the estate upon conversion to that possessed as of the petition date), 1307(b) (granting debtors power to convert). The *O'Quinn* holding has subsequently been rejected by Judge Ezra of the U.S. District Court for the Western District of Texas. *Viegelahn v. Harris (In re Harris)*, 491 B.R. 866, 873 (W.D. Tex. 2013) (following *In re Michael*, 699 F.3d 305 (3d Cir. 2012), which holds that undistributed funds held by the trustee at the time of conversion should be returned to the debtor). Judge Ezra's *Harris* opinion is

5

District Judge Hudspeth overturned the bankruptcy court's ruling, commenting that conversion cases "offer little guidance" concerning dismissals. *Clark*, No. SA-12-CA-979, slip op. at 4 n. 2. He held that section 349 governs disposition of funds upon dismissal, and that it is "not ambiguous."[2] *Id*. at 7. "At dismissal, the property of the bankruptcy estate revests in the entity in which such property was vested immediately before the commencement of the case." *Id*. (In a Chapter 13 case, "property of the estate" includes funds received after the time the bankruptcy petition is filed. 11 U.S.C. § 1306(a). It thus includes the funds at issue here.)

As Judge Hudspeth noted, section 349 "only deals with property that was property of the estate pre-petition" and "says nothing about post-petition property of the estate such as the debtor's earnings" (and such as the funds at issue here). *Clark*, slip op. at 10. Nonetheless, Judge Hudspeth reasoned that section 349 "directs that . . . funds [held by the Trustee upon dismissal] vest at dismissal in the only entity that could claim entitlement to those future earnings at the petition [date]—the debtor whose personal services would earn the wages that section 1306(a) captures for the bankruptcy estate." *Id*. at 9.

This seems the most faithful interpretation of a difficult section of the Code, and the Court will follow it. Applying that law to this case, the Court holds that upon dismissal, the money disgorged by Sher and returned to the Trustee "revest[ed]" in the debtor, as "the only entity that could claim entitlement to those future [funds]." *Id*.

The Trustee was aware of *Clark* but argued the decision was not binding on this Court.

---

currently on appeal at the Fifth Circuit. No. 13-50374. Thus, guidance in the conversion context may be forthcoming.

[2] The trustee in the *Clark* case argued that a different result was mandated by section 1326 of the Bankruptcy Code. Judge Hudspeth found section 1326 inapplicable, because it deals only "payments that are made by the debtor to the trustee prior to confirmation," and "provides no direction to the trustee in a case of post-confirmation dismissal." Slip op. at 5-6 (citing cases supporting this conclusion). Although section 1326 is not as clear as would be desired, this interpretation seems persuasive.

The issue is worth a comment. It is an open question whether a bankruptcy court must treat the rulings of district courts within its district as binding precedent. Although the majority view appears to be that district court decisions are not binding, courts and commentators are deeply divided on the question, and cogent arguments have been raised for and against.[3] Some judges carve the question up more finely, following decisions only from a particular division within the district, because appeals are usually routed from bankruptcy courts to district courts within a given division.[4] Also, it has been pointed out that unpublished opinions might not merit as much deference given that "neither bankruptcy judges nor lawyers who practice in bankruptcy courts

---

[3] *Compare In re Romano*, 350 B.R. 276, 277-81 (Bankr. E.D. La. 2005) (surveying arguments for and against, and concluding that district court opinions are not binding on bankruptcy courts, in part because the contrary holding "effectively makes the random assignment of appeals [to different district court judges within the multi-judge district] determinative for *stare decisis* purposes"), *In re Ford*, 415 B.R. 51, 60-61 (Bankr. N.D.N.Y. 2009) (reasoning that "bankruptcy courts, as a unit of the district court, are not inferior courts and just as there is no 'law of the district' mandated for district judges to follow, bankruptcy judges are likewise not bound by decisions of a single district court judge"), *Villarreal v. Showalter (In re Villarreal)*, 413 B.R. 633, 641 (Bankr. S.D. Tex. 2009) (Isgur, J.) (explaining that court "does not understand how *stare decisis* could apply to decisions" made by one district judge in multi-judge district), *Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 336 n. 1 (Bankr. S.D.N.Y. 1999) (finding that "where the bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district judge in that district"), *and* Paul Steven Singerman & Paul A. Avron, *Of Precedents and Bankruptcy Court Independence: Is a Bankruptcy Court Bound by a Decision of a Single District Judge in a Multi-Judge District?*, AM. BANKR. INST. J., July-Aug. 2003, at 1 (surveying case law and that "it is clear that the courts holding that bankruptcy courts are not bound by decision of a single district judge in a multi-judge district are in the majority"), *with In re DePugh*, 409 B.R. 125, 131 n. 5 (Bankr. S.D. Tex. 2009) (Bohm, J.) (holding that district court precedent is binding on bankruptcy courts within the district "under the federal hierarchical judicial structure"), *Rand Energy Co. v. Strata Directional Tech., Inc., (In re Rand Energy Co.)*, 258 B.R. 274, 276 (Bankr. N.D. Tex. 2001) (same), *and* Erwin Chemerinsky, *Decision-Makers: In Defense of Courts*, 71 AM. BANKR. L.J. 109, 129 (1997) (articulating position that district court decisions should bind bankruptcy courts within a district).

[4] *In re Hubbard*, 23 B.R. 671, 673-74 (Bankr. S.D. Ohio 1982) (concluding that the court is "not bound to follow a [d]istrict [c]ourt decision in a different division of the same district"); *cf. In re Lane*, No. 08-73187, 2010 WL 148634, at *3 (Bankr. C.D. Ill. Jan. 12, 2010) (declining to follow district court precedent and "[a]dditionally" finding that the "binding nature" of the precedent is "limit[ed]" because the case arose in a different division within the district).

can be expected" to be aware of them. *IRR Supply Ctrs. v. Phipps (In re Phipps)*, 217 B.R. 427, 431 (Bankr. W.D.N.Y. 1998).

*Clark* is unpublished, and it is from the San Antonio (not Austin) division of this district. These factors might weigh against this Court being bound by it. On the other hand, the Court accords due respect to the institution of the district court of which this Court sits as adjunct. In addition, particularly on issues of pure statutory construction, it is important to maintain uniformity within the district (and indeed the circuit) whenever possible. Whether or not *Clark* is formally binding, it is for all these reasons highly persuasive.

Thus, the Court follows *Clark*—as far as it goes. But *Clark* did not address when a court could or should, in a given case, "order otherwise," as contemplated by section 349(b)(3). The Court now turns to that issue.

2. <u>Can and should the Court now "order otherwise"?</u>

Under section 349(b), the power to "order otherwise" is limited not only by the explicit requirement of "cause," but also by the implicit requirement that "ordering otherwise" take place before the dismissal (at which point the property "revests"). This conclusion is demanded by the plain text, and is confirmed by the practical problems that could arise from dismissals subject to a later "order otherwise." Neither trustee, nor debtor, nor creditors should have to bear the risk of retroactive redistributions—at least absent extraordinary circumstances not presented here. The dismissal in this case was concluded pursuant to an agreement carefully negotiated by able counsel, at a time when the possibility of disgorgement was expressly within the contemplation of all parties and the Court. That was the point at which the Court could best have ordered otherwise, and it has now passed.

The Court agrees with the Trustee that Potter's behavior is indefensible. She should have

obtained court approval for Sher's retention and payment. But the consequences of that behavior have been considered and addressed by the prior order authorizing Sher's retention, and by the agreement that led to the partial disgorgement of Sher's fees.

### III. CONCLUSION

For the reasons stated above, the Court will DENY the Trustee's motion and order the funds released to the Debtor.